In the Matter of INTERSTATE MARKINGS, INC., Debtor.

**Bankruptcy No. 84–1184.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.
April 13, 1987.

Albert I. Gordon, P.A., Tampa, Fla., for debtor.

John D. Emmanuel, Tampa, Fla., for claimant.

### ORDER ON OBJECTION TO CLAIM #34 OF BALL, BALL & BROSAMER, INC.

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 Reorganization case, and the immediate matter under consideration is an Objection to Proof of Claim filed by Ball, Ball and Brosamer, Inc., and Ball & Brosamer, Inc., a Joint Venture (BBB). The claim of BBB was filed on January 10, 1986, in the amount of $164,-170.17 plus interest, costs and attorneys' fees. The basis of the claim is the alleged breach of a certain contract by Interstate Markings, Inc., the Debtor (Debtor) referred to as "Subcontract No. 871–14 for work on the Ehrenberg-Phoenix Expressway, Interstate–10". It is the contention of the Debtor that BBB failed to attach a copy of any document reflecting a contract between the parties and that it is not indebted to BBB in any amount, let alone in

the sum of $164,170.17, or that the Debtor never entered into any contract with BBB.

The Court heard argument of counsel, received testimony of witnesses and documentary evidence, considered the record and makes the following Findings of Fact and Conclusion of Law:

BBB is a California corporation engaged in highway construction in several states, including in the State of Arizona. The Debtor is a Florida corporation engaged in a "sawing and sealing" operation in connection with highway construction. Sometime prior to 1983 BBB entered into a subcontract with Nevada Sawing & Sealing, Inc. (Nevada) for the performance of Subcontract No. 871–14 on the Ehrenberg-Phoenix Expressway, Interstate–10 project. Inasmuch as Nevada was unable to furnish the required payment and performance bond, BBB contacted the Debtor in order to obtain the services of the Debtor in conjunction with the performance of the subcontract.

On November 17, 1983, BBB sent a letter to the Debtor enclosing an original and one copy of a subcontract for work to be performed on the Ehrenberg-Phoenix highway in Arizona. The letter specifically stated: "both subcontract agreements should be executed and returned to this office for our completion". The letter also required that certain insurance certificates and a performance and payment bond be forwarded together with the signed subcontracts. The letter ended with the statement "when all of the above has been accomplished, we will send a fully signed subcontract to you". The Debtor executed the subcontract agreement, which was placed in evidence, and returned it to BBB without the certificates of insurance and without the performance and payment bond. The Debtor never furnished the insurance certificates or the performance and payment bond. BBB never completed the execution of the subcontract agreement. In March 1985 BBB entered into a contract for the same work with Nevada at the same prices set forth in the original subcontract document with the Debtor. Eventually Nevada was employed by BBB as a subcontrac-

tor, but it failed to complete the project in accordance with the terms of the contract, and BBB was ultimately compelled to complete the contract itself. As a result BBB claims to have incurred damages in excess of $164,000.00. Later on BBB settled with Nevada by retaining certain machinery and equipment owned by Nevada at an agreed value of approximately $35,000.00. (The settlement embraced the Ehrenberg-Phoenix highway subcontract and other subcontracts which BBB Nevada allegedly breached.) The claim of BBB is based on the balance of damages, claims after crediting from its total the settlement with Nevada.

■ As noted earlier, the Debtor is a Florida corporation which had its principal place of business in St. Petersburg, Florida. BBB's office is at Danville, California. The work to be performed under the Ehrenberg-Phoenix Expressway subcontract was to be performed in Arizona. To determine the legal effect of the document which was executed by the Debtor and which was not executed by BBB, this Court should apply the conflict of law principles of the State of Florida. *Haisten v. Grass Valley Medical Reimbursement Fund, Ltd.*, 784 F.2d 1392 (USCA9 1986); *In re Bennett*, 51 B.R. 619 (USBC New Mexico 1984).

Matters bearing upon the execution and interpretation and validity of a contract are determined by the law of the place where the contract is made. *Scudder v. Union National Bank*, 91 U.S. (1 Otto) 406, 23 L.Ed. 245 (1876); *Warner v. Florida Bank and Trust Company*, 160 F.2d 766 (CCA5 1947); 10 Fla.Jur.2d, *Conflict of Laws*, § 11.

Professor Williston states:

It is the undoubted rule that, where the contract contemplates the execution of it by the signing, either party has the right to insist upon the condition....

S. Williston, a *Treatise on the Law of Contracts*, Section 28A (3rd edition 1957) (footnotes omitted).

Florida and California follow the same rule, *Mann v. Thompson*, 100 So.2d 634 (DC 1 1958); *Biber v. The City of Miami*, 82 So.2d 747 (Fla.1955); *Forgeron, Inc. v.*

*Hansen,* 149 Cal.App.2d 352, 308 P.2d 406 (1957); *Spinney v. Downing,* 108 Cal. 666, 41 P. 797 (1895); *Columbia Pictures Corporation v. DeToth,* 26 Cal.2d 753, 161 P.2d 217 (1945).

■ A written document signed by the Debtor and not signed by the Claimant is not a binding contract. *In re W.F. Martin Company,* 66 B.R. 409, 15 BCD 241 (USBC ED Tenn.1986). Moreover, BBB failed to establish any mutuality of obligation between the parties, and the parties were free to discontinue their relationship at any time. *In re B.J. Thomas,* 34 B.R. 417 (USBC MD Fla.1983).

■ Notwithstanding the wording of its Proof of Claim, BBB also sought to establish an oral contract. It had the burden of establishing the existence of an oral contract by more than preponderance of the evidence. *Tipton v. Woodbury,* 616 F.2d 170, 176 (5th Cir.1980), citing *Sultan v. Jade Winds Construction Corp.,* 277 So.2d 574, 576 (Fla. 3d DCA 1973) cf. *Transammonia Export Corp. v. Conserv, Inc.,* 554 F.2d 719 (5th Cir.1977).

BBB also failed to carry its burden of proving the precise terms of the alleged oral contract. Moreover, BBB's only witness admitted under oath that BBB never had "oral contracts". It admitted that it doesn't operate with oral contracts.

■ Neither can BBB prevail and be entitled to the allowance of its claim on the theory of promissory estoppel. This is so because it had no right to rely upon the written document signed by the Debtor, and not completed by it. As noted earlier, BBB never had a written contract with the Debtor. BBB could hardly claim that it reasonably relied to its own detriment on a written contract which was not signed by it.

It is clear that BBB entered into a subcontract with Nevada Sawing & Sealing, Inc., at the same price as in its original contemplated contract with the Debtor. BBB attempts to visit upon this estate the damages resulting from the breach of the subcontract by Nevada Sawing & Sealing, Inc. There is nothing in this record which would justify the acceptance of this proposition.

For the foregoing reasons, the objection to the claim of BBB, be and it is hereby, sustained and the claim of BBB, be and the same is hereby, disallowed with prejudice.