In re Jimmy Q. DAVIS, Jr., Debtor.

Bankruptcy No. 87–6066–THOM.

United States Bankruptcy Court,
M.D. Georgia,
Thomasville Division.

Sept. 3, 1987.

David M. Wolfson, Valdosta, Ga., for plaintiff.

Larkin M. Fowler, Jr., Thomas S. Bishop, Moultrie, Ga., for creditor.

Lillian H. Lockary, Asst. U.S. Atty., Macon, Ga.

Walter W. Kelley, Albany, Ga., trustee.

## MEMORANDUM OPINION

JOHN T. LANEY, III, Bankruptcy Judge.

This case is before the Court on the Debtor's objection to the claim of The Federal Land Bank of Columbia. After notice a hearing was held July 29, 1987 on the objection.

The parties stipulated at the hearing that the amount of the debt to The Federal Land Bank of Columbia was $25,287.04 as of March 17, 1987, the date of filing, as was stated in The Federal Land Bank's Proof of Claim. The issue remaining was The Federal Land Bank's claim for statutory attorney's fees under Official Code of Georgia Annotated, section 13–1–11, as part of its claim.

The parties stipulated that the Debtor had been in default on its debt to The Federal Land Bank of Columbia, which was secured by a first lien on the Debtor's real estate. The Federal Land Bank sent an attorney's fee demand letter accelerating the debt as provided for in its deed to secure debt, which was received more than ten days prior to the filing of Debtor's petition herein, and it began foreclosure proceedings and advertising. The Debtor

filed a bankruptcy petition under Chapter 12 to stop the foreclosure of its property. The Debtor's Plan of Reorganization provided for the curing of defaults and for payment to The Federal Land Bank of the total amount of the allowed claim by retiring stock and by the payment of the remaining balance over 15 years at ten percent interest. The Plan was confirmed on July 21, 1987.

The Federal Land Bank's deed to secure debt provided for payment of "a reasonable attorney's fee of not less than ten percentum (10%) of the amount secured hereby, and all costs incurred ..." for collection of debt in the event of default. Under Georgia law statutory attorney's fees are governed by O.C.G.A. section 13–1–11, which states that:

"(a) Obligations to pay attorneys fees upon any note or other evidence of indebtedness, in addition to the rate of interest specified therein, shall be valid and enforceable and collectible as part of such debt if such note or other evidence of indebtedness is collected by or through an attorney after maturity, subject to the following provisions...."

■ The Federal Land Bank is seeking attorney's fees of $2,503.00. The Debtor objects that The Federal Land Bank is not entitled to the statutory attorney's fees, since foreclosure proceedings were commenced but no sums were collected. He acknowledges that the creditor is entitled to "reasonable attorney's fees."

The Federal Land Bank has cited an Eleventh Circuit case, *In re East Side Investors*, 702 F.2d 214 (11th Cir.1983) as supporting its claim for statutory attorney's fees. The Court in *East Side Investors* found that the filing of the Chapter XII petition did not diminish the Debtor's obligation for attorney's fees if they were vested when the petition was filed. The debt in *East Side Investors* was collected pursuant to a consent order entered into by the parties after the commencement of the Debtor's bankruptcy proceedings. *East Side Investors* was distinguished from cases involving cure and reinstatement of debt in *In re Masnorth Corp.*, 28 B.R. 892 (Bankr.N.D.Ga.1983), *(Masnorth I)*, and 36 B.R. 335 (Bankr.N.D.Ga.1984), *(Masnorth II)*. The debt to The Federal Land Bank has been cured and reinstated by the confirmation of the Plan of Reorganization in this case. The Court agrees with the reasoning of Judge W. Homer Drake in *Masnorth*.

"Statutory attorney's fees, as contemplated by Official Code of Georgia section 13–1–11 do not become a lien against secured property where a default on an underlying obligation is cured and reinstated pursuant to the provisions of the Bankruptcy Code." *Masnorth I* at 896. *Masnorth* was a Chapter 11 case decided under Section 1124(2)(C), but it also cited section 365(b) of the Bankruptcy Code which is not limited to Chapter 11 cases.

"This treatment of cure and reinstatement comports with the rehabilitative purposes of Chapters 11 and 13 of the Bankruptcy Code, both of which contain cure and reinstatement provisions." *Masnorth II* at 337.

Citing *In re Taddeo*, 685 F.2d 24 (2nd Cir.1982), Judge Drake stated that "the primary consequence of default—acceleration—is reversed by cure and reinstatement. Therefore the debt is not *mature* within the meaning of Official Code of Georgia section 13–1–11, and statutory attorney's fees do not attach as a lien against the subject property." *Masnorth II* at 337.

The cure of default and a reinstatement of a mortgage is contemplated by Chapter 12 of the Bankruptcy Code and is in furtherance of the Congressional purpose of allowing family farmer debtors to reorganize. Section 1222(b) provides that the plan may:

"(2) modify the rights of holders of secured claims, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims;

(3) provide for the curing or waiving of any default; ...

(5) provide for the curing of any default within a reasonable time and maintenance of payments while the case is pending on any unsecured claim or secured claim on which the last payment is

due after the date on which the final payment under the plan is due;

(6) subject to section 365 of this title, provide for the assumption, rejection, or assignment of any executory contract or unexpired lease of the debtor not previously rejected under such section...."

Curing a default in Chapter 12 has the same effect as curing a default in Chapter 13 or in Chapter 11, as in *Masnorth* and *Taddeo*. Default in this case was cured in the confirmed Plan of Reorganization. The cure of a default returns the parties to their pre-default position. Debtors are allowed to "deaccelerate" their mortgage and reinstate its payment schedule. *Taddeo* at 26. If there has been no default and no acceleration, there can be no request for attorneys fees arising out of default and acceleration. Therefore statutory attorney's fees do not become a lien against the secured property. *Masnorth I* at 896.

 Section 1222(b)(6) refers to section 365 of the Bankruptcy Code. Section 365(b)(1) states that:

"If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease."

The *Debtor* must compensate the creditor for any loss due to cure and reinstatement of a mortgage. He is liable for any damage sustained by the creditor in accelerating the debt and beginning foreclosure proceedings in reliance on the default provisions of the contract. The "actual pecuniary losses" include attorney's fees and costs. However, allowable attorney's fees and costs may only be reasonable amounts actually incurred before the filing of the bankruptcy petition, when the creditor would no longer be entitled to rely on contractual default clauses. *Masnorth II* at 338.

 Under Section 506(b) of the Bankruptcy Code, an over secured creditor may collect reasonable attorney's fees and expenses as provided in its agreement. In this case, the creditor, in addition to presenting evidence of expenses incurred for foreclosure efforts prior to the bankruptcy filing presented evidence of attorney's fees charged after the bankruptcy filing. The debtor does not challenge these fees as not being reasonable. Therefore, under the combined authority of Section 365 and Section 506(b), the Court allows as a part of the creditor's claim its prepetition and postpetition reasonable attorney's fees in the amount of $530.50 plus advertising expense of $65.00 for a total of $595.50. An order will be entered in accordance with this Opinion.